**United States District Court
Central District of California
Eastern Division**

| | |
|---|---|
| Autumn Smith et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>Diamond Resorts Management, Inc. et al.,<br><br>　　　　　　Defendants. | EDCV 15-2477-VAP (SPx)<br><br>**Order Granting Motion to Remand** |

On December 15, 2015, Plaintiffs Autumn Smith and Alice Alvarez ("Plaintiffs") filed their Motion to Remand ("Motion") the instant action to the Superior Court of the State of California for the County of Riverside ("Riverside Superior Court"). (Doc. 9.) Defendants Diamond Resorts Management, Inc. and Diamond Resorts International ("Defendants") opposed the Motion on January 4, 2016 (Opposition ("Opp'n") (Doc. 10)), and Plaintiffs replied on January 11, 2016 (Doc. 11).

After consideration of the papers filed in support of, and in opposition to, the Motion, the Court GRANTS the Motion.

**I. BACKGROUND**

On August 28, 2015, Plaintiff Smith filed her initial complaint against Defendants in Riverside Superior Court, alleging violations of various California Labor Codes. (See Complaint (See Exhibit 1, Doc. 1).) Based on these violations, Plaintiff brought (1) a class action on behalf of those similarly situated, and (2) a representative action under the Private Attorneys General Act ("PAGA"). (See id. at ¶¶ 13-23.) Plaintiff served Defendants with the Complaint on September 17, 2015, and September 21,

2015. (See Declaration of Jill J. Parker ("Parker Declaration") (Doc. 9-1) ¶ 2.)

Plaintiffs filed their First Amended Complaint ("FAC") on October 30, 2015. (Motion at 2.) On December 4, 2015, Defendants removed the instant action to this Court based on allegations in the FAC, claiming the Court had jurisdiction under the Class Action Fairness Act (CAFA). (See Removal (Doc. 1).)

## II.  LEGAL STANDARD

Removal jurisdiction is governed by statute. See 28 U.S.C. §§ 1441 et seq.; Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979) ("The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress" (citations omitted)). Defendants may remove a case to a federal court when a case originally filed in state court presents a federal question or is between citizens of different states. See 28 U.S.C. §§ 1441(a)-(b), 1446, 1453. Only those state court actions that originally could have been filed in federal court may be removed. 28 U.S.C. § 1441(a); Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).

Although CAFA gives district courts diversity jurisdiction to hear class actions, defendants must show that "any member of a class of plaintiffs is a citizen of a State different from any defendant" (minimum diversity); the number of members of the proposed plaintiff class exceeds 100 in the aggregate (numerosity); and "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs" (amount in controversy). 28 U.S.C. §1332(d); see also Luther v. Countrywide Home Loans Servicing LP, 533 F.3d 1031, 1033-34 (9th Cir. 2008); Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1020-21 (9th Cir. 2007).

A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation. Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014). When the removed complaint fails to allege a specific

amount in controversy, or when the complaint alleges an amount in controversy less than the jurisdictional threshold, the removing defendant must prove by a preponderance of the evidence that the amount in controversy is greater than $5,000,000. Rodriguez v. AT&T Mobility Servs., No. 13-56149, 2013 WL 4516757, at *6-7 (9th Cir. Aug. 27, 2013) (citing Standard Fire Ins. Co. v. Knowles, 133 S. Ct. 1345, 1348 (2013)); Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 400 (9th Cir. 2010) (citing Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007)). If a defendant fails to meet the requisite burden of proof, a court must remand for lack of subject matter jurisdiction.

In determining the amount in controversy, the Court considers not only the facts alleged in the complaint, taken as true for purposes of calculating the amount, but also "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997). "[T]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." Lewis, 627 F.3d at 400.

### III. DISCUSSION

Plaintiffs contend removal is improper because (1) it was untimely, (2) the parties are not diverse, and (3) Defendants failed to satisfy the amount-in-controversy requirement. (See Motion at 4, 13, 25.) Even if Defendants had timely removed the instant action[1] and properly shown diversity, they have failed to prove by a preponderance of the evidence that the amount in

---

[1] Plaintiffs claim Defendants' removal is untimely because it occurred after the 30-day period to remove under 28 U.S.C. § 1446 had expired. (See Motion at 13.) The Court disagrees. Service of the initial complaint triggers the 30-day period only if "the case stated by the initial pleading is removable on its face." Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 694 (9th Cir. 2005). Here, the initial complaint was not removable "on its face" under CAFA because Plaintiff Smith only alleged a class "greater than fifty (50) individuals" (Complaint ¶ 16(a)) while CAFA requires the class to consist of at least 100 individuals (See 28 U.S.C. §1332(d)). See Harris, 425 F.3d at 694. Accordingly, the initial complaint did not trigger the 30-day period for removal.

3

controversy is greater than $5,000,000 under CAFA. Accordingly, the Motion is GRANTED.

### A. The Amount-in-Controversy Requirement

Based on the alleged Labor Code violations in the FAC and their attorneys' fees, Defendants contend the amount in controversy is "at least $7,758,346."[2] (See Removal ¶ 45.) The Court reviews each of Defendants' calculations, in turn, below.

#### 1. Overtime Penalties

Plaintiffs seek to recover all unpaid overtime compensation owed pursuant to California Labor Codes § 510 and § 1198. (See FAC ¶¶ 64-67.) Defendants claim such allegations put $1,059,157[3] in controversy, assuming a violation rate of "one hour of overtime per week." (Removal ¶ 26.)

Defendants contend this assumption is "conservative," given Plaintiffs' allegations that "they . . . were not paid for overtime work every day." (See Opp'n at 8.) Plaintiffs make no such allegation. They simply state they worked overtime "[d]uring the relevant time period" performing various activities such as "customer service . . . and providing coverage." (See FAC ¶ 65.) Although Defendants assert "customer service" is a "daily task[]" (Opp'n at 7), they have not provided any evidence to support this claim. Furthermore, Plaintiffs claim that one of the activities they performed during overtime "includ[ed] . . . customer service" -- not that they were always performing customer service or other daily tasks when working overtime. (See FAC ¶ 65.)

More significantly, Defendants have failed to put forth any evidence supporting a violation rate of one hour of overtime per week. Although

---

[2] Calculated as follows: $1,333,650 (Wage Statement Penalties) + $1,059,157 (Overtime Penalties) + $1,412,210 (Meal and Rest Period Penalties) + $2,401,660 (Waiting Time Penalties) + $1,551,669 (Attorneys' Fees) = $7,758,346.

[3] Calculated as follows: 65,199 weeks worked x 1 hour overtime per week x $10.83 (average hourly rate) x 1.5 (overtime premium multiplier) = $1,059,157.

4

Defendants base their estimation on (1) Plaintiffs' assertion that they worked overtime during the relevant time period (See Removal ¶ 24), and (2) Plaintiffs' allegation that Defendants employed a policy of wage abuse (See id. at ¶ 25), courts have found similar bases insufficient to support a defendant's assumption regarding overtime violations.  See Nolan v. Kayo Oil Co., No. C 11-00707 MEJ, 2011 WL 2650973, at *4 (N.D. Cal. July 6, 2011) ("Simply assuming that every employee . . . worked at least one hour of overtime a week, without some facts or evidence to support these assumptions, is insufficient to meet Defendant's evidentiary burden."); Ray v. Nordstrom Inc., No. 2:11-cv-07277-JHN-CWx, 2011 WL 6148668, at *3 (C.D. Cal. Dec. 9, 2011) (finding Plaintiff's allegation that Defendant "failed to pay all California hourly employees at least some regular and overtime hours" insufficient to support Defendant's assumption that "purported class members missed . . . one hour of overtime pay per pay period" (internal quotation marks omitted)); Roth v. Comerica Bank, 799 F. Supp. 2d 1107, 1119-20 (C.D. Cal. 2010) ("More significantly, defendants' calculation admittedly rests on the speculative assumption that every class member was denied three to five hours of overtime pay ever week.").

The Court acknowledges that other district courts have found to the contrary.  See, e.g., Wilson v. Best Buy Co., Inc., No. 2:10-cv-3136-GEB-KJN, 2011 WL 445848, at *2 (E. D. Cal. Feb. 8, 2011) (finding Plaintiff's allegation he worked overtime "[d]uring the relevant time period" sufficient to support Defendant's assumption that each class member was denied one hour of overtime pay per week (internal quotation marks omitted)).  The Court is unpersuaded by such cases primarily because "[a]s the employer, Defendant[s] ha[ve] access to employment and payroll records that would allow [them] to provide more accurate figures," rather than mere estimations.  See Nolan, 2011 WL 2650973, at *5.  Furthermore, Defendants have failed to show how often the class members and Plaintiffs performed overtime work.  Such a showing could possibly justify Defendants' assumption, but on this record, the Court finds Defendants have failed to meet their burden by a preponderance of the evidence.

**2.    Meal and Rest Period Penalties**

5

Plaintiffs seek to recover for missed meal and rest periods pursuant to California Labor Codes § 226.7 and § 512(a). (See FAC ¶¶ 69-92.) Defendants claim such allegations put an additional $1,412,210[4] in controversy, assuming "one meal period and one rest break violation per week." (See Removal ¶¶ 34-36.)

Defendants' assumption regarding meal and rest period violations suffers from the same defect as their assumption regarding overtime violations -- neither is supported by any evidence. Defendants again assert their assumption is "conservative" because Plaintiffs allege Defendants employed a uniform policy of wage abuse and thus denied Plaintiffs their meal and rest periods in violation of California law. (See Removal ¶ 34.) With regard to rest periods, Defendants further emphasize Plaintiffs' allegation that Defendants denied them rest periods for "*every shift* lasting three and one-half (3.5) to six (6) hours and/or . . . for *every shift* lasting six (6) to ten (10) hours." (See Opp'n at 9.) The Court finds none of these bases sufficient to support Defendants' assumption of one meal period and one rest break violation per week.

Even assuming each class member was denied a rest period and a meal period for every shift lasting the requisite length, it is still unclear how many of the total shifts in question were of "sufficient length to mandate the provision of meal and rest periods." (See Motion at 17.) As Defendants "provide[] no factual underpinning for the assumption that a meal and rest break violation occurred one time per week," the Court finds they have failed to sustain their evidentiary burden for purposes of removal. See Weston v. Helmerich & Payne Inter. Drilling Co., No. 1:13-cv-01092-LJO-JLT, 2013 WL 5274283, at *6 (E.D. Cal. Sept. 17, 2013); see also Munoz v. Central Parking Sys., Inc., 2010 WL 3432239, at *2 (C.D. Cal. Aug. 30, 2010) (dismissing Defendant's assumption of one meal period violation per week because Defendant "fail[ed] to provide . . . evidentiary support").

**3.    Wage Statement Penalties**

---

[4] Calculated as follows: [65,199 weeks worked x 1 meal period violation x $10.83 (average hourly rate)] + [$65,199 x 1 rest break violation x $10.83 (average hourly rate)] = $1,412,210.

Plaintiffs seek to recover penalties for allegedly non-compliant itemized wage statements. (See FAC ¶¶ 113-119.) Defendants claim these alleged violations put $1,333,650[5] in controversy, assuming a 100% violation rate.

Defendants contend their calculation is based on Plaintiffs' allegation that "they and other class members were required to work off-the-clock without pay every shift."[6] (Opp'n at 10.) As explained above, Plaintiffs make no such allegation. Without more, Defendants' calculation is based solely on a Declaration made by Erion Knighton, a Human Resources analyst at Diamond Resorts International ("DRI"). (Declaration of Erion Knighton ("Knighton Declaration") (Doc 1-1).) In her Declaration, Knighton notes (1) the number of employees who worked for Defendants during the proposed period; (2) how many total weeks were worked; (3) the average hourly wage for those employees; and (4) the number of employees who left DRI during the relevant period. (See id. at ¶2.)

As the Ninth Circuit explained in Garibay v. Archstone Communities LLC, 539 F. App'x 763 (9th Cir. 2013), such a declaration standing alone is insufficient to make assumptions about other aspects of the amount-in-controversy calculation, for example, the possible number of wage statement violations. In Garibay, defendants submitted a "declaration by their supervisor of payroll, which set[] forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages. Beyond this, the defendants rel[ied] on speculative and self-serving assumptions about key unknown variables." Id. at 764. For example, nothing in the declaration explained why each member of the class would be entitled to recovery for every pay

---

[5] Calculated as follows: [$50 x 893 (the appropriate number of first time violations)] + [$100 x 12,890 (the appropriate number of subsequent violations)] = $1,333,650.

[6] To the extent Defendants base their calculation on missed meal and rest periods (See Removal ¶ 19), the Court finds the argument unpersuasive. Defendants provide no factual support for their contention that *every wage statement* at issue was affected by Defendants' alleged failure to provide meal and rest periods.

7

period for inaccurate wage statements.  See id.  As Defendants have submitted a similar declaration, the Court finds their "evidence [is] insufficient to support removal jurisdiction under CAFA."  See id.

### 4. Waiting Time Penalties

Plaintiffs seek statutory penalty wages alleging they "did not receive all wages, earned and unpaid, within seventy-two hours of their leaving [D]efendants['] employ."  (See FAC ¶ 102.)  Defendants contend these alleged violations put $2,401,660[7] in controversy, assuming a 100% violation rate.  (See Removal ¶¶ 40, 42.)

Even assuming a 100% violation rate is appropriate, the Court has already called into question Defendants' calculations for Overtime Penalties, Meal and Rest Period Penalties, and Wage Statement Penalties.  Excluding these calculations, Defendants are left with a damage calculation of, at most, $2,401,660 -- well below the jurisdictional threshold for CAFA.  See 28 U.S.C. §1332(d).

### 5. Attorneys' Fees

Defendants calculated an amount in controversy for attorneys' fees as 25% of Plaintiffs' projected damages.  (Removal ¶ 44.)  While courts in the Ninth Circuit have considered potential attorneys' fees in calculating the amount in controversy in wage-and-hour cases, Defendants' fees estimate is based on a conjectural damages calculation and should be disregarded. See, Campbell v. Vitran Express, Inc., No. CV-10-04442-RGK(SHx), 2010 WL 4971944, at *4 (C.D. Cal. Aug. 16, 2010) ("[B]ecause such uncertainty surrounds Defendant's calculation of damages and penalties, the Court cannot find that the inclusion of a 25% attorneys' fee, which Defendant recommends, would necessarily place the amount in controversy over the $5,000,000 CAFA threshold.")  Moreover, even if the Court were to assume Defendants calculated their fees correctly, the amount in controversy would still be below the jurisdictional threshold under CAFA.

---

[7] Calculated as follows: 924 separated employees x $10.83 (hourly wage rate) x 8 hours per day x 30 days = $2,401,660.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS the Motion and REMANDS this action to the Superior Court of the State of California for the County of Riverside.

**IT IS SO ORDERED.**

Dated: 1/29/16

Virginia A. Phillips
United States District Judge